**Electronically Filed
Intermediate Court of Appeals
CAAP-11-0000413
10-JAN-2014
03:15 PM**

NO. CAAP-11-0000413

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


JANAE D. VICTOR, Individually and as Prochein Ami of
SINJIN VICTOR, a Minor, Plaintiffs-Appellants,
v.
MICHAEL C. KOGA, DOREEN F. KOGA,
Defendants-Appellees,
and
LYLE M. NONAKA and DOE ONE through DOE TEN, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 09-1-2122)


SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Reifurth and Ginoza, JJ.)

Plaintiffs-Appellants Janae D. Victor ("Janae"),
Individually and as Prochein Ami of her minor son ("Minor"),
(collectively, the "Victors") appeal from the February 23, 2010
Order Granting Defendants Michael C. Koga and Doreen F. Koga's
Motion to Dismiss Complaint for Failure to State a Claim And/Or
Motion for Summary Judgment,[1] entered in the Circuit Court of
the First Circuit ("Circuit Court").[2]

This appeal arises out of two incidents of sexual
assault committed by Defendant Lyle M. Nonaka ("Nonaka") against
Minor at the home of Defendants-Appellees Michael C. Koga and

---

[1] A Judgment relating to the Order Granting Defendants Michael C.
Koga and Doreen F. Koga's Motion to Dismiss Complaint for Failure to State a
Claim And/Or Motion for Summary Judgment was filed on February 23, 2010 and
attached to the Notice of Appeal filed by the Victors.

[2] The Honorable Gary W.B. Chang presided.

Doreen F. Koga ("Doreen") (collectively, the "Kogas"), where Nonaka also resided. The Victors raise a single point of error, contending that the Circuit Court improperly granted summary judgment on the issue of whether the Kogas were on notice as to Nonaka's propensity to commit sexual assault given "the strong physical evidence of [Nonaka's] deviant sexual behavior.[3] In support, the Victors advance various arguments, which we summarize as follows: (1) that the Kogas, as homeowners, had a special relationship toward Minor, who was an invitee under Restatement (Second) of Torts § 314A(3); (2) that the Kogas had notice that Nonaka posed an unreasonable risk of harm to Minor; (3) that Minor, as a minor, belonged to a protected "identifiable class of plaintiffs," thereby imposing a duty on the Kogas toward Minor; (4) that the Kogas had "particular foreseeability" or "special knowledge" that Nonaka posed a risk of foreseeable harm toward Minor; and (5) that the Kogas had a duty to protect Janae from emotional distress.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve the Victors' appeal as follows:

I. Background

Nonaka is Doreen's younger brother. He lived, at the time, in the downstairs portion of the Kogas' home in Aiea, Hawaiʻi (the "Property"). In 2007, on two separate occasions, Nonaka sexually assaulted Minor, a fourteen-year-old boy, whom Nonaka had invited into his portion of the Kogas' residence. The Kogas did not know Minor or that Nonaka had invited Minor to the house. Nonaka pled guilty to multiple counts of sexual assault in a separate criminal case.

---

[3] The Victors' point of error is insufficient in numerous respects under Hawaiʻi Rules of Appellate Procedure ("HRAP") Rule 28(b)(4) and bears no evident relation to the argument section as required in HRAP Rule 28(b)(7). While "[p]oints not presented in accordance with this section will be disregarded," HRAP Rule 28(b)(4)(D), we proceed in recognition of our appellate courts' long-standing commitment to allowing parties their day in court, to the extent that we can understand their claims. *See Marvin v. Pflueger*, 127 Hawaiʻi 490, 496, 280 P.3d 88, 94 (2012).

In the instant case, the Victors' complaint stated four counts against the Kogas, each of which alleged a duty on the part of the Kogas to Minor or Janae, and a subsequent breach of that duty. The Circuit Court granted summary judgment in favor of the Kogas on all of the counts against them.[4/] The court explained that it was unable to find a legal duty owed by the Kogas to the Victors, that there was no special relationship between the Kogas and either Nonaka or Minor, that there was no notice to the Kogas that Nonaka had any dangerous propensities, and that the incidents were not foreseeable to the Kogas.

II. Discussion

A. Special relationship

The Victors argue that because the Kogas were owners, possessors, or occupiers of land or property, and because Minor was an invitee or licensee on the Property, a special relationship existed such that the Kogas were required to use ordinary care to protect Minor. The Victors rely on *Atahan v. Muramoto*, 91 Hawai'i 345, 984 P.2d 104 (App. 1999), *overruled on other grounds by Lansdell v. Cnty. of Kauai*, 110 Hawai'i 189, 130 P.3d 1054 (2006), for the proposition that "[l]andowners and occupiers of land have a duty of ordinary care to invitees and licensees."

*Atahan*, however, concerns landowners who make land or water areas available to the public, and addresses for which type of "invitees" such a landowner may have liability. *Atahan*, 91 Hawai'i at 351-53, 984 P.2d at 110-12. Nothing in the record, however, indicates that the Kogas held the Property open to the public. *See also Cuba v. Fernandez*, 71 Haw. 627, 633, 801 P.2d 1208, 1211 (1990) ("[T]o hold one's land open to the public requires some affirmative action signaling that entry is desired rather than simply disregarded."); RESTATEMENT (SECOND) OF TORTS § 332 cmt. b (1965) ("[A]n invitation is conduct which justifies others in believing that the possessor desires them to enter the

_____

[4/] Although the Kogas' motion was styled alternatively as a motion to dismiss or for summary judgment, the Kogas attached declarations that the Circuit Court considered. Thus, we treat the motion as one for summary judgment.

land.").

In sum, the fact that the Kogas owned the Property and that Nonaka invited Minor to enter the Property does not create a special relationship between the Kogas and Minor for the purpose of establishing premises liability. RESTATEMENT (SECOND) OF TORTS § 314A (1965).

B.    Notice that Nonaka posed an unreasonable risk of harm

The Victors argue that the "overwhelming physical evidence gave the [Kogas] notice that Nonaka posed an unreasonable risk of harm of sexually assaulting [Minor], a minor."  The Victors recite the list of pornographic and other sex-related materials found in Nonaka's downstairs living area and assert that, according to the police officer who collected the evidence, the condition of Nonaka's living space "was similar to that of other home searches of sexual assault perpetrators." The Victors contend that "the Kogas had notice that Nonaka was a safety risk on their property because of the physical evidence . . . and because that common area or living room was messy, cluttered and scary."

The Victors cite to four cases from other jurisdictions to support the contention that summary judgment was inappropriate when "attention and discussion were given to the behavior, past or present, of the perpetrator of the sexual abuse which then gave rise to the notice requirement": *Bjerke v. Johnson*, 742 N.W.2d 660, 668 (Minn. 2007), *J.S. v. R.T.H.*, 714 A.2d 924, 929 (N.J. 1998), *Doe v. Franklin*, 930 S.W.2d 921, 928 (Tex. Ct. App. 1996), and *Gritzner v. Michael R.*, 598 N.W.2d 282, 287-88 (Wis. Ct. App. 1999) *aff'd in part, rev'd in part, and remanded*, 611 N.W.2d 906 (Wis. 2000).

The facts of the instant case, however, render each of the out-of-state cases distinguishable in important respects.  As the Kogas did not know who Minor was or that he was present in the home until after the incidents occurred, foreseeability can not be established through evidence of unusual and intimate behavior between the perpetrator and victim over a period of years.  *Cf. Bjerke, supra* (finding the creation of a special relationship through the defendant's daily care of the minor

4

victim over the course of four years).

In response to the Kogas' declarations that they had no notice of any criminal propensity by Nonaka, the Victors point to the evidence of pornographic and other sex-related materials in Nonaka's living area. However, none of the out-of-state cases suggest that possession of such material create a duty upon third parties. The Victors also fail to present any evidence that the sex-related material were out in the open, that the Kogas saw them, or that the materials, if seen, would indicate that Nonaka was a pedophile. The Kogas' unchallenged declarations establish that they did not know of nor had reason to suspect that there were any prior criminal incidents by Nonaka or that he would, in the future, commit any such crime. *Cf. J.S., supra,* (finding a special relationship where the wife conceded that she knew or should have known of her husband's propensities and that she knew that the victims were visiting her home nearly every day and that they spent a considerable amount of time there alone with her defendant husband); *Franklin, supra* (finding foreseeability when grand-daughter reported to her defendant-grandmother that she had been molested by her grandfather, and, in response, the defendant-grandmother chastised her and told her to "[n]ever say anything like that again").

Finally, the Victors do not rebut the Kogas' declarations that they did not voluntarily assume supervision of Minor, did not supervise or take custody of Nonaka, and did not have knowledge of any propensity or prior incidents by Nonaka. *Cf. Gritzner, supra* (finding mother's boyfriend liable for negligent supervision of mother's ten-year-old son who sexually molested a four-year-old neighbor girl visiting the home when the boyfriend was aware that mother's son had previously engaged in inappropriate sexual acts with other children, including his own half-sister, and where boyfriend assumed custody and control of the neighbor girl, allowing her to come to the home to play with mother's son). In sum, the Victors fail to rebut the Kogas' declarations or demonstrate that a genuine issue of material fact exists as to whether the Kogas had notice that Nonaka posed an unreasonable risk of harm to Minor.

C.    Foreseeability; state policy

The Victors argue that Minor was "a foreseeable plaintiff, as he belonged to an 'identifiable class of plaintiffs' for which the Hawaii legislature and Hawaii law enforcement have tried to protect."  In support, the Victors cite to *J.S.*, which described New Jersey as having a "strong policy . . . to protect children from sexual abuse and to require reporting of suspected child abuse."  *J.S.*, 714 A.2d at 930 (quoting *J.S. v. R.T.H.*, 693 A.2d 1191, 1194 (N.J. Super. Ct. App. Div. 1997)).

The Victors argue that Hawaiʻi has a similar policy, and lists as examples the Hawaiʻi Attorney General's Hawaii Internet Crimes Against Children Task Force, and reporting requirements under Hawaii Revised Statutes ("HRS") Chapters 350 and 846E.  The Victors contend that these examples gave notice to the Kogas of their duty to protect Minor, "because the State of Hawaii has sought to protect minor children from hazards and dangers of sexual abuse, and [Minor] falls within that identifiable class of plaintiffs."

The Victors' argument is unpersuasive.  The facts of *J.S.* are distinguishable and it takes more than a well-intentioned state policy to create a duty on the part of people, or a class of people, not identified in the policy.  Accordingly, the mere existence of the task force and statutory reporting requirements does not create a duty or notice on the part of the Kogas, or that Minor was a foreseeable plaintiff.

D.    Particular foreseeability based on co-occupancy

The Victors argue that the Kogas, as "co-occupants and longtime roommates" with Nonaka, had "particular foreseeability" or "special knowledge" that he posed a risk of foreseeable harm. In support, the Victors again refer to *J.S.*, 714 A.2d at 929-30, for the proposition that "[o]ften time[s] the sexual abuse of a child is committed secretly and behind close[d] doors, and the wife may be the only person with special knowledge of the husband's sexually abusive behavior or potential for sexual assault."

The fact that the Kogas did not know Minor and did not know that he was in the home distinguishes the instant case from *J.S.*, where the wife conceded that she knew or should have known of her husband's propensities, and that she knew that the victims were visiting at her home nearly every day and that they spent considerable amounts of time there alone with her husband. *See id.* at 936. Accordingly, the Kogas did not have "particular foreseeability" or "special knowledge" that Nonaka posed a risk of foreseeable harm.

E.    Emotional distress

The Victors refer to *Kahoʻohanohano v. Dep't of Human Servs.*, 117 Hawaiʻi 262, 308, 178 P.3d 538, 584 (2008) and *Doe Parents No. 1 v. Dep't of Educ.*, 100 Hawaiʻi 34, 69, 58 P.3d 545, 580 (2002) in contending that it was foreseeable that "Janae would suffer emotional distress upon the Kogas' breach of duty to protect her son from a sexual predator." Those cases, however, are inapposite here.

In *Kahoʻohanohano*, the Hawaiʻi Supreme Court held that the legislature, through the plain language of HRS Chapter 587 ("Chapter 587"), read in conjunction with its purpose, created a duty on the part of the Department of Human Services to children specifically identified to the department as being the subject of suspected abuse. 117 Hawaiʻi at 290-91, 178 P.3d at 566-67. Similarly, in *Doe Parents*, the Hawaiʻi Supreme Court held that the Hawaiʻi Department of Education ("DOE"), had a statutory duty to protect children. The court noted that "the state required that children attend school and, thereby, deprived them of the protection from reasonably foreseeable harm that their parents normally provide." *Doe Parents*, 100 Hawaiʻi at 79-80, 58 P.3d at 590-91. The court found that the DOE thus "shares a 'special relationship'—*i.e.*, a quasi-parental or *in loco parentis* custodial relationship—with its students, which obligates the DOE to exert reasonable care in ensuring each student's safety and welfare, as would a reasonably prudent parent." *Id.* at 80, 58 P.3d at 591. Therefore, the court held that the DOE's duty ran to the student's parents as well as the student because it was foreseeable that the parents would suffer emotional distress

should harm come to their child as a consequence of the DOE's breach. *Id.*

The Victors do not explain how Chapter 587 or HRS § 298-9 apply to the Kogas, who never met Minor, had no custodial relationship over him, and were unaware that he was in their home. Therefore, the Kogas did not have a duty of care to Janae, nor could they foresee her emotional distress.

III. Conclusion

Therefore, we affirm the February 23, 2010 Order Granting Defendants Michael C. Koga and Doreen F. Koga's Motion to Dismiss Complaint for Failure to State a Claim And/Or Motion for Summary Judgment.

DATED: Honolulu, Hawai'i, January 10, 2014.

On the briefs:

Joyce J. Uehara and
Dan S. Ikehara
for Plaintiffs-Appellants.

Randall Y.S. Chung and
Milton S. Tani
(Chung & Ikehara)
for Michael C. Koga
and Doreen F. Koga,
Defendants-Appellees.

Presiding Judge

Associate Judge

Associate Judge

8